United States Courts
Southern District of Texas
FILED

APR 2 0 2026

Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| HSA ST. JOSEPH LLC, | § | |
| | § | |
| Plaintiff, | § | Case No. 4:25-cv-01411 |
| | § | |
| v. | § | |
| | § | |
| CLINT SOSA | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Clint Sosa ("Sosa"), files this Motion for Summary Judgment ("the Motion") pursuant to Federal Rule of Civil Procedure 56 seeking denial of all claims asserted by Plaintiff HSA St. Joseph LLC ("St. Joseph") in its Complaint as a matter of law, and states as follows:

## I.    STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

1.    St. Joseph initiated this lawsuit on March 26, 2025, alleging Sosa violated the Consumer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") by maintaining access to St. Joseph's social media accounts following his termination. [Dkt. 1].

2.    On March 27, 2025, St. Joseph filed a motion for a temporary restraining order and preliminary injunction, which was granted without any testimony or defense from Sosa. [Dkt. 11].

3.    Sosa filed his answer to the Complaint on May 21, 2025. [Dkt. 18].

1

4.   The Court entered a docket control order on July 10, 2025, setting the deadlines for discovery, expert reports and dispositive motions. [Dkt. 21]. St. Joseph did not engage in any discovery or otherwise prosecute its claim. Discovery closed on January 30, 2026 and the case is now ripe for summary judgment.

## II.   ISSUES TO BE DECIDED

**Issue One:** Whether the Plaintiff has any evidence to meet the elements of a claim under the CFAA.

## III.   INTRODUCTION AND SUMMARY OF THE ARGUMENT.

5.   This case represents an attempt by a former employer to weaponize the CFAA against an employee whom they failed to offboard properly. St. Joseph alleges that Sosa violated the CFAA regarding certain social media accounts. However, the undisputed evidence shows that (1) Sosa was granted authorized access to these accounts during his employment, (2) St. Joseph failed to revoke that access or provide a transition period upon termination, and (3) Sosa unlinked his personal accounts from the management of these accounts after his employment ended and could not regain access to these accounts. Because the CFAA is not a tool for redressing post-termination anxiety over unrevoked credentials, and because no "access" occurred, St. Joseph's claim fails as a matter of law.

## IV.   FACTUAL BACKGROUND

6.   Sosa began working for Steward Health Care on the marketing and communications team on or about June 14, 2021. [Declaration of Clint Sosa, ¶ 2].

7.    Steward Health Care went through bankruptcy proceedings, and the bankruptcy court approved the sale of eight hospitals to Healthcare Systems of America ("HSA"), including St. Joseph, in the fall of 2024. [Sosa Decl. ¶ 3].

8.    As part of the sales, Sosa was involved in transitioning website domains and social media accounts of St. Joseph and seven other facilities to HSA. During this time, Sosa provided the login information to "X" to Nicole Castillo as the X platform was the only account managed through passwords. [Sosa Decl. ¶ 4].

9.    The Facebook and LinkedIn accounts were managed by linking a separate account to the accounts for management purposes. Therefore, there was no "login" information for the Facebook and LinkedIn accounts, instead Sosa would log in to his personal accounts and access management tools through the "linked" hospital accounts. [Sosa Decl. ¶ 5].

10.    Following the sale, HSA hired Sosa to continue the marketing and communications work for all its hospitals, including the St. Joseph facility through which his HR was coordinated. Sosa began working for HSA on November 25, 2024. [Sosa Decl. ¶ 6].

11.    As part of his employment, Sosa managed the social media accounts, which included only Facebook and LinkedIn as use of the X platform was discontinued. [Sosa Decl. ¶ 7].

12.    On March 3, 2025, moments before the end of the business day, Jaime Malveaux, the HR representative of St. Joseph, notified Sosa of his termination from the company by telephone. [Sosa Decl. ¶ 8].

3

13.    During the call, Sosa inquired about a transition plan for the tasks that he managed, including transitioning the social media accounts, because he was the only person in the department.  Sosa was told that there was no transition plan.  [Sosa Decl. ¶ 9].

14.    Sosa sent an email to his boss providing a summary of the current work and a draft of the marketing strategy so that the work could continue following his termination. [Sosa Decl. ¶ 10].

15.    Sosa received an official separation email on March 4, 2025. No transition plan was included in the email.  [Sosa Decl. ¶ 11].

16.    Following his termination, Sosa logged into his personal Facebook and LinkedIn accounts and unlinked the hospital accounts, including the St. Joseph accounts from his profile.  [Sosa Decl. ¶ 12].

17.    Following his termination, Sosa did not access St. Joseph's social media accounts to post to the accounts or acquire any data or information from the accounts. [Sosa Decl. ¶ 13].

18.    After Sosa unlinked his personal profiles from the St. Joseph social media accounts, he could no longer access those accounts.  [Sosa Decl. ¶ 14].

19.    During his employment with HSA through its St. Joseph facility, Sosa did not own the website management platform as HSA's agent for domain and website management was StarVista Tech.  [Sosa Decl. ¶ 15].

20.    On March 25, 2025, Sosa received a voicemail from Jaime Malveaux asking for the social media passwords, including for the St. Joseph's social media accounts.  Sosa

4

called Ms. Malveaux and explained that he did not have a list of passwords for the social media accounts and therefore, he could not provide them. [Sosa Decl. ¶ 16].

21.     Sosa further explained that recovery of the Facebook and LinkedIn accounts would require connecting personal profiles to the accounts, and that, for Facebook, a profile associated with his deactivated HSA work email was connected to the accounts. HSA would need to coordinate with its IT to reactivate Sosa's HSA email account to access this profile connected to the Facebook accounts. Sosa also notified Ms. Malveaux that following the recovery of the accounts, the Facebook platform may require a multi-factor authentication ("MFA") number that he could provide if his cell phone number was still listed for the MFA process. [Sosa Decl. ¶ 17].

22.     Sosa tried to explain the recovery process to Ms. Malveaux over the phone, but given her lack of technical experience in this area, suggested that the company retain a marketing specialist to assist with the account recovery. [Sosa Decl. ¶ 18].

23.     Following this phone call, Sosa received an inflammatory phone call from Faisal Gill, a senior executive at HSA, accusing Sosa of refusing to provide the passwords to the social media accounts. Sosa tried to explain that the social media accounts did not have passwords and there was a technical process to linking those accounts to personal profiles. Mr. Gill, lacking technical expertise in this area, chose neither to listen to Sosa nor engage the appropriate technical experts. [Sosa Decl. ¶ 19].

24.     The following day, HSA through its St. Joseph facility filed this lawsuit. [Dkt. 1].

25.    Following receipt of the Order on the temporary restraining order, Sosa retained counsel at significant cost to assist him as he was unfamiliar with the legal process. [Sosa Decl. ¶ 21].

26.    On or about April 1, 2025, Sosa compiled guidance on the recovery process, and this guidance was submitted to HSA through his counsel.  Sosa provided the one-time MFA number for Facebook.  [Sosa Decl. ¶ 22].

27.    HSA regained access to the Facebook accounts on or about April 1, 2025, and to the LinkedIn accounts on or about April 3, 2025.  [Sosa Decl. ¶ 23].

### V.    ARGUMENT AND AUTHORITIES

28.    Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Gray v. Killick Grp., L.L.C.*, 113 F.4th 543, 548 (5th Cir. 2024). "A genuine dispute of material fact exists 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Ahders v. SEI Priv. Tr. Co.*, 982 F.3d 312, 315 (5th Cir. 2020) (citation omitted). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment may also be established where the moving party by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).

6

29. To allege a civil violation of the CFAA, a plaintiff must establish that: (1) the defendant intentionally accessed a computer; (2) the access was unauthorized or exceeded the defendant's authorized access; (3) through that access, the defendant thereby obtained information from a protected computer; and (4) the conduct caused loss to one or more persons during any one-year period aggregating at least $5,000 in value. *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 759 (6th Cir. 2020).

30. St. Joseph cannot establish any of the elements of a CFAA claim.

31. First, Sosa unlinked his personal profiles from the St. Joseph social media accounts following his termination, and therefore he could no longer access the accounts. [Sosa Decl. ¶ 14]. Without any evidence of Sosa's access to the accounts, St. Joseph's claim fails as a matter of law.

32. Second, St. Joseph cannot establish that any purported access was unauthorized or exceeded Sosa's authorization. Sosa managed the social media accounts during his employment. He specifically inquired of a transition plan when he was notified of his termination, yet St. Joseph took no steps to ensure it would have access and that Sosa's authorized access would be revoked. [Sosa Decl. ¶ 9]. If a plaintiff takes no steps to revoke previously authorized access, the claim fails under the CFAA. *See Van Buren v. United States*, 593 U.S. 374, 390 (2021) (adopting a "gates-up-or-down inquiry" for unauthorized access or exceeds authorized access cases under the CFAA); *Royal Truck*, 974 F.3d at 759-60 (holding that former employees access to records and emailing the records and information to their personal accounts prior to their access being revoked was not a violation of the CFAA). Here, because St. Joseph took no steps to revoke Sosa's

7

access or management of its social media accounts, it left the gates down. Therefore, St. Joseph cannot establish the second element of a claim under the CFAA.

33.    Third, St. Joseph cannot establish that Sosa obtained information from a protected computer. Once unlinked, Sosa could not go into St. Joseph's social media accounts. He did not post anything on the accounts or take data or information from the accounts. [Sosa Decl. ¶ 13].

34.    Finally, St. Joseph cannot establish any damages resulting from a purported access to the social media accounts. Sosa did not delete data, change content or post anything (let alone anything improper) that could cause St. Joseph's damage. [Sosa Decl. ¶ 13].

35.    Instead, St. Joseph's entire complaint appears to be *its* inability to access the social media accounts. That failure is of its own doing. St. Joseph's did not request any transition of the social media accounts in connection with Sosa's termination. [Sosa Decl. ¶ 9]. Sosa even requested that a transition occur, but St. Joseph ignored the request. [Sosa Decl. ¶ 9]. Due to that failure on St. Joseph's part, the accounts essentially became orphaned or abandoned, meaning they could not be accessed without a recovery process performed by the platforms themselves and a designated representative of the company. [Sosa Decl. ¶ 17].

36.    Courts have explained that the CFAA is intended to punish "hacking," not to remedy an employer's failure to change a password or ensure its own access following the termination of an employee. *See e.g., Van Buren v. United States*, 593 U.S. 374, 390 (2021) (discussing the focus of hacking under the CFAA); *Royal Truck*, 974 F.3d at 760

8

(discussing the CFAA's "narrow scope" "aimed at preventing the typical consequences of hacking, rather than the misuse of corporate information"). Because Plaintiff failed to provide a transition or remove Sosa's access, the "gates" remained open by St. Joseph's own hand.

37. Because Plaintiff cannot establish all of the elements of its CFAA claim, its claim fails as a matter of law. Therefore, the Court should grant Defendant's motion for summary judgment.

## VI.   **PRAYER**

38. WHEREFORE, PREMISES CONSIDERED, Defendant Clint Sosa respectfully requests that the Court grant his Motion for Summary Judgment, deny Plaintiff's claim under the CFAA as a matter of law, and grant Defendant such other and further relief, legal and equitable, be awarded Defendant.

Dated: April 20, 2026

Respectfully submitted,

Defendant Clint Sosa

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been served on counsel of record for all parties via electronic filing system this 20th day of April 2026

Asim Ghafoor
HSA Regional Counsel
1401 St. Joseph Parkway
Houston, TX 77002

*Via Email:* aghafoor@hsahospitals.com

Defendant Clint Sosa

10