United States Courts
Southern District of Texas
FILED

APR 2 0 2026

Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| HSA ST. JOSEPH LLC, | § | |
| | § | |
| Plaintiff, | § | Case No. 4:25-cv-01411 |
| | § | |
| v. | § | |
| | § | |
| CLINT SOSA | § | |
| | § | |
| Defendant. | § | |

**DECLARATION OF CLINT SOSA IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, Clint Sosa, declare as follows:

1.   I have personal knowledge of the facts set forth within.

2.   I began working for Steward Health Care on the marketing and communications team on or about June 14, 2021.

3.   Steward Health Care went through bankruptcy proceedings, and the bankruptcy court approved the sale of eight hospitals to Healthcare Systems of America ("HSA"), including St. Joseph, in the fall of 2024.

4.   As part of the sales, I was involved in transitioning website domains and social media accounts of St. Joseph and seven other facilities to HSA. During this time, I provided the login information to "X" to Nicole Castillo as the X platform was the only account managed through passwords.

5.   The Facebook and LinkedIn accounts were managed by linking a separate account to the accounts for management purposes. Therefore, there was no "login" information for the Facebook and LinkedIn accounts, instead I would log in to my personal accounts and access management tools through the linked hospital accounts.

6.   Following the sale, HSA hired me to continue the marketing and communications work for all its hospitals, including the St. Joseph facility through which my HR was coordinated. I began working for HSA on November 25, 2024.

1

7.     As part of my employment, I managed the social media accounts, which included only Facebook and LinkedIn as use of the X platform was discontinued.

8.     On March 3, 2025, moments before the end of the business day, Jaime Malveaux, the HR representative of St. Joseph, notified me by telephone that I was being let go.

9.     During the call, I inquired about a transition plan for the tasks that I managed, including transitioning the social media accounts, because I was the only person in the department. I was told that there was no transition plan.

10.     I sent an email to my boss, Faisal Gill, providing a summary of the current work and a draft of the marketing strategy so that the work could continue following my termination.

11.     I received an official separation email on March 4, 2025. No transition plan was included in the email.

12.     Following my termination, I logged into my personal Facebook and LinkedIn accounts and unlinked the hospital accounts, including the St. Joseph accounts, from my profile.

13.     Following my termination, I did not access St. Joseph's social media accounts to post to the accounts or acquire any data or information from the accounts.

14.     After I unlinked my personal profiles from the St. Joseph social media accounts, I could no longer access those accounts.

15.     During my employment with HSA through its St. Joseph facility, I did not own any website domains or website management platforms for HSA and St. Joseph. Instead, HSA's agent for domain and website management was StarVista Tech.

16.     On March 25, 2025, I received a voicemail from Jaime Malveaux asking for the social media passwords, including for the St. Joseph's social media accounts. I called Ms. Malveaux and explained that I did not have a list of passwords for the social media accounts and therefore, I could not provide them.

17.     During this phone conversation, I explained that recovery of the Facebook and LinkedIn accounts would require connecting personal profiles to the accounts, and that, for Facebook, a profile associated with my deactivated HSA work email was connected to the accounts. HSA would need to coordinate with its IT to reactivate my HSA email account to access this profile connected to the Facebook accounts. I also notified Ms. Malveaux that following the recovery of the accounts, the Facebook platform may require a multi-factor authentication ("MFA") number that I could provide if my cell phone number was still listed for the MFA process.

2

18.    I tried to explain the recovery process to Ms. Malveaux over the phone but given her lack of technical experience in this area, I suggested that the company retain a marketing specialist to assist with the account recovery.

19.    Following this phone call, I received an inflammatory phone call from Faisal Gill, a senior executive at HSA, accusing me of refusing to provide the passwords to the social media accounts. I tried to explain that the social media accounts did not have passwords and there was a technical process to linking those accounts to personal profiles. Mr. Gill, lacking technical expertise in this area, would not listen to what I was trying to explain, nor did he engage the appropriate technical experts. Instead, following the phone call, he texted me that he would file a lawsuit against me.

20.    The following day, HSA through its St. Joseph facility filed this lawsuit against me. I was served with the Complaint and notice of a hearing on a motion for temporary restraining order, but was not able to attend given the short notice.

21.    Following receipt of the Order on the temporary restraining order, I retained a lawyer because I was unsure of how to respond to the Order. Retaining a lawyer cost me money that I did not have due to my recent termination and inability to find new employment.

22.    On or about April 1, 2025, I compiled guidance on the recovery process, and this guidance was submitted to HSA through my counsel. While HSA was going through the account recovery process for Facebook, I provided the one-time MFA number that went to my telephone number.

23.    HSA regained access to the Facebook accounts on or about April 1, 2025, and to the LinkedIn accounts on or about April 3, 2025, including for St. Joseph.

24.    HSA, through its St. Joseph facility, did not provide me any compensation for my time in assisting them to recover their access to their social media accounts.

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on April 20, 2026.


Clint Sosa

3